UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**DION ROSS,**

      **Plaintiff,**

-v-

**STATE FARM FIRE AND
CASUALTY COMPANY,**

      **Defendant.**

Case No. 3:13-cv-401

Judge Thomas M. Rose

---

**ENTRY AND ORDER GRANTING STATE FARM'S MOTION FOR
SUMMARY JUDGMENT (Doc. #17) AND TERMINATING THIS CASE**

---

Now before the Court is a Motion for Summary Judgment filed by State Farm Fire and Casualty Company ("State Farm"). (Doc. #17.) This Motion is now fully briefed and ripe for decision.

Dion Ross ("Ross") is the Plaintiff in this matter and State Farm is the Defendant. Ross's Complaint was filed in the Common Pleas Court for Montgomery County, Ohio. It was removed to this Court by State Farm based upon this Court having diversity subject matter jurisdiction. (Doc. #1.)

Ross identifies two (2) Causes of Action. (Doc. #3.) The First is for breach of a contract of insurance identified as a policy of Commercial Homeowners Coverage, policy No. 25-B1-M784-9 (the "Policy"). The Second is for breach of the duty of good faith in the processing of Ross's insurance claim on a fire that occurred at a property located at 1319 West Fifth Street in Dayton, Ohio.

A relevant factual background will first be set forth. This is followed by the standard of

review for motions for summary judgment and an analysis of State Farm's Motion.

## RELEVANT FACTUAL BACKGROUND

This case involves a fire that occurred on October 31, 2012, to a real property located at 1319 West Fifth Street in Dayton, Ohio (the "Property"). (Affidavit of Nick Waltz ("Waltz Aff.") ¶¶ 1, 2 Dec. 2, 2014.) At the time of the fire, the Property was owned by Djuna Brown-Jennings. (Id. ¶ 4.)

Ross had owned the Property. (Id. at Statement of Dion Ross taken on Nov. 16, 2012 p. 2.) He lived at that address until March or April of 2012. (Id.) Ross moved out when renovations were started. (Id.) He testified that he expended nearly $20,000 to renovate. (Deposition of Dion L. Ross ("Ross Dep.") 44 Jul. 8, 2014.)

Ross was the prior owner of the Property and had deeded it to Djuna Brown-Jennings, his sister, prior to the fire. (Waltz Aff. ¶ 4.) Ross transferred the deed to Djuna Brown-Jennings[1] on January 20, 2012 via quit claim deed. (Examination Under Oath of Dion Ross dated Mar. 14, 2013 p. 35; Ross Dep. 29 .) He planned to deed the Property back over to Luxury Sports Superstore, LLC, an entity that he allegedly owned. (Id. p. 27.) He claimed that he transferred the Property to his sister because he did not think he could transfer the Property directly to Luxury Sports Superstore without waiting a year. (Ross Dep. 29-30.) State Farm was not made aware of the Property transfer prior to the fire. (Waltz Aff. ¶ 4.)

The fire was called into the Dayton Fire Department at 9:59 p.m. on October 31, 2012. (Id. Dayton Fire Report.) Fire crews arrived at the Property at 10:03 p.m. (Id.) The Dayton Fire

---

[1] Djuna Brown-Jennings had three or four rental properties that belonged only to her. (Waltz Aff. at Statement of Dion Ross taken on Nov. 16, 2012 p. 26.)

Department's report notes that the fire was incendiary and the material causing the fire was gasoline. (Id.)

State Farm asked Fire and Explosion Consultants, LLC to determine the cause and origin of the fire. (Id. ¶ 3.) Fire and Explosion Consultants determined that the fire was intentionally set and began in the center east room with the use of gasoline and an open flame ignition source. (Id.) All other potential causes of the fire were eliminated according to the consultants' report. (Id.)

In addition to employing Fire and Explosion Consultants, State Farm assigned claim representative Nick Waltz ("Waltz") to investigate. (Id. ¶ 1.) As part of his investigation, Waltz took a recorded statement of Ross on November 16, 2012. (Id. ¶ 5.)

Ross told Waltz that he was not living at 1319 West Fifth Street on the day of the fire. (Id.) Ross had lived there "on and off" since purchasing the Property in 2005. (Id.) He had rented the Property occasionally, but the Property had been vacant since September or October of 2011. (Id.) Ross also told Waltz that Ross was the owner of Luxury Sports Superstore, LLC, which was in the business of buying and renovating properties and then selling them. (Id. at Recorded Interview of Dion Ross p. 4.) Luxury Sports Superstore, LLC, was located at 5360 West Third Street in Dayton, Ohio. (Id.)

Ross later confirmed, in his Deposition, that he was not the only member of Luxury Sports Superstore, LLC. (Ross Dep. 41.) David Scott was also a member. (Id.)

Ross reported that he was last at 1319 West Fifth street at approximately 4:00 p.m. on the afternoon of October 31, 2012. (Waltz Aff. ¶ 7.) Ross then went to his business on West Third Street (Luxury Sports Superstore, LLC) and stayed there until sometime between 7:00 and 8:00

p.m. (Id.) From there, Ross reported that he went to the Marriott on South Patterson Boulevard, and arrived at the Marriott ten (10) to twenty (20) minutes later. (Examination Under Oath p. 62 Mar. 4, 2013.) Ross said he remained at the Marriott bar until approximately midnight. (Id.)

Waltz then reviewed the surveillance video from the Marriott. (Id. ¶ 8.) Ross was shown on the video entering the main lobby entrance of the Marriott at 9:52 p.m. (Id.) The time stamp on the video is, as stated by the individual who maintains it, within fifteen (15) minutes of the actual time. (Affidavit of Victor Ayres ¶ 4 Dec. 3, 2014.)

On March 14, 2013, during an Examination Under Oath, Ross said he would have arrived at the Marriott hotel between 7:00 p.m. and 8:00 p.m. (Id. ¶ 9.) He also said he never left Marriott until he left for good at 10:00 or 11:00 p.m. (Id.)

Ross first obtained the Policy on the Property from State Farm in 2011. (Id.) Relative to the issues in this case, the Policy includes the following provision regarding concealment or fraud:

> This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

(State Farm Motion for Summary Judgment (doc. #17) Exhibit B.)

On July 3, 2013, State Farm denied Ross's claim and voided the Policy for multiple reasons. (Waltz Aff. ¶ 10.) The Policy premiums paid after October 31, 2012, were refunded to Ross. (Id.) Ross initiated this lawsuit on October 29, 2013. (Doc. #3.)

## STANDARD OF REVIEW

State Farm's Motion for Summary Judgment is brought pursuant to Fed. R. Civ. P. 56. Rule 56 and its associated caselaw establish the standard of review for summary judgment.

Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).  Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rule 56 "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position.  *Celotex Corp.*, 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that

party. *Anderson*, 477 U.S. at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affirmations are more credible. 10A Wright & Miller, *Federal Practice and Procedure*, §2726. Rather, credibility determinations must be left to the fact-finder. *Id*. However, the mere existence of a scintilla of evidence in support of the nonmoving party is not sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252. "There must be evidence on which the jury could reasonably find for the plaintiff." *Id*. The inquiry, then, is whether reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. *Id*.

Finally, in ruling on a motion for summary judgment, "[a] district court is not… obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely upon the Rule 56 evidence specifically called to its attention by the parties. The Rule 56 evidence includes the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted. Fed. R. Civ. P. 56(c).

This Court, according to State Farm, has diversity jurisdiction over Ross's Complaint. In addition to applying the federal procedural standard for motions for summary judgment, as a federal court located in Ohio exercising diversity jurisdiction, this Court must apply Ohio substantive law unless the law of another state is specifically implicated. *Hisrich v. Volvo Cars of N. America*, *Inc.*, 226 F.3d 445, 449 (6th Cir. 2000). This Court must apply the substantive law of Ohio "'in accordance with the then-controlling decision of the highest court of the state.'"

*Imperial Hotels Corp. v. Dore*, 257 F.3d 615, 620 (6th Cir. 2001)(quoting *Pedigo, M.D. v. UNUM Life Ins. Co. of America*, 145 F.3d 804, 808 (6th Cir. 1998)).

To the extent that the highest court in Ohio has not addressed the issue presented, this Court must ascertain from all available data, including the decisional law of Ohio's lower courts, what Ohio's highest court would decide if faced with the issue. *Imperial Hotels*, 257 F.3d at 620; *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir. 1985). Finally, where Ohio's highest court has not addressed the issue presented, a federal court may not disregard a decision of an Ohio appellate court on point unless the federal court is convinced by other persuasive data that the highest court of Ohio would decide otherwise. *Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1485 (6th Cir. 1989).

## ANALYSIS

State Farm asserts that the Policy should be voided because Ross misrepresented or concealed material information pertinent to his claim. State Farm also asserts that Ross did not have an insurable interest in the Property at the time of the incident so he could not collect under the Policy. Finally, State Farm asserts that it did not act arbitrarily, capriciously or without reasonable justification when it denied Ross's claim and voided the Policy, and that there is not clear and convincing evidence that it acted with actual malice or aggravated fraud.

Ross responds that there is a genuine issue of material fact as to whether his statements constitute intentional misrepresentation of a material fact or intentional concealment of a material fact. Ross also responds that he had an insurable interest in the property at the time of the incident. Finally, Ross responds that there are genuine issues of material fact as to whether State Farm acted in bad faith and as to whether Ross is entitled to punitive damages.

Thus, several issues have been raised in the Briefing Papers. Each will be addressed in turn.

### Insurable Interest?

In Ohio, a policy owner must have an insurable interest in the subject matter of the insurance. *Phillips v. Cincinnati Insurance Co.*, 398 N.E.2d 564, 565 (Ohio 1979). If not, the policy is void. *Id.* A person has an insurable interest when the person would profit by or gain some advantage by the continued existence of the property and would suffer a loss or disadvantage by the destruction of the property. *Id.* at 566(citing 3 Couch on Insurance 2d 86, Section 24:13).

In this case, there is Rule 56 evidence that Ross had made an investment in the Property, including renovations, prior to deeding it to his sister. However, the Property was owned by Ross's sister, Djuna Brown-Jennings, at the time of the fire.

Even though Ross indicates that he planned to deed the Property to Luxury Sports Superstore in the future and assuming that he alone could cause this to happen, Ross was not the owner of the Property at the time of the fire. Further, Ross was not the only member of Luxury Sports Superstore (Ross Dep. 40-41) so deeding the property to Luxury Sports Superstore would not be deeding the Property back to himself.

Therefore, even though Ross may have made an investment in the Property before the fire, he did not own the Property. Further, since Ross was not the only member of Luxury Sports Superstore, LLC, at the time of the fire, he alone would not profit by the continued existence of the Property and would not suffer a loss or disadvantage by the destruction of the Property.

There are no genuine issues of material fact and, as a matter of law, Ross did not have an

insurable interest in the Property at the time of the fire. Therefore, the Policy was void at the time of the fire.

### **Misrepresentation Or Concealment of Material Information?**

The Policy at issue here is void if any insured intentionally concealed or misrepresented any material fact or circumstance relating to the insurance. A misrepresentation is material if, in the context of an insurer's post-loss investigation, the false statement concerns a subject relevant and germane to the insurer's investigation. *Freeland v. Grange Mutual Casualty Co.*, No. 14AP-206, 2014 WL 5867039 at *2 (Ohio Ct. App. Nov. 13, 2014). Therefore, false answers are material if they might have affected the attitude and action of the insurer or if they were calculated either to discourage, mislead or deflect the insurer's investigation in an area that might seem to the insurer a relevant or productive area to investigate. *Id.* Finally, materiality can be decided by a court if reasonable minds could not differ on the materiality question. *Abon, Ltd. v. Transcontinental Insurance Co.*, No. 2004-CA-0029, 2005 WL 1414486 at *13 (Ohio Ct. App. June 16, 2005).

State Farm argues that Ross misrepresented his whereabouts at the time the fire was set. Thus, to determine if there was a material misrepresentation of a material fact or circumstance relating to the insurance, the Court must first determine whether there are genuine issues of material fact regarding an alleged misrepresentation. To show a misrepresentation, State Farm must show that Ross actually stated something that was not true. If the Court finds no genuine issues of material fact that a misrepresentation was made, the Court would next determine if the misrepresentation is material.

At the outset, there is no evidence as to when the fire was set. There is, however, Rule 56

evidence that the fire was first reported to the Dayton Fire Department at 9:59 p.m. on October 31, 2012.

Ross indicated that he was at Luxury Sports Superstore, his place of business, until about 7:00 or 8:00 p.m. on the night of the fire after which he went to the Marriott. He also indicated that he arrived at the Marriott ten (10) to twenty (20) minutes later. Video at the Marriott, accurate to within fifteen (15) minutes, showed Ross arriving at 9:52 p.m.

If the video at the Marriott was accurate to within fifteen (15) minutes, Ross could have arrived at the Marriott as early as 9:37 p.m. according to the video. Since the fire was reported at 9:59 p.m., it could have started either before or after 9:37 p.m. and there is no Rule 56 evidence to the contrary. Therefore, based upon the accuracy of the video time, Ross could have had the opportunity to start the fire and proceed to the Marriott.

Ross's statement that he left his office between 7:00 p.m. and 8:00 p.m. and arrived at the Marriott ten (10) to twenty (20) minutes later is shown to be a misrepresentation by the video at the Marriott. Construing the Rule 56 evidence in Ross's favor, Ross could have arrived at the Marriott twenty (20) minutes after leaving his business and he left his business at 8:00 p.m. at the latest. Thus, based upon his statements, Ross could have arrived at the Marriot at 8:20 p.m. at the latest. However, the video at the Marriott shows Ross arriving at 9:37 p.m. at the earliest. Thus, there are no genuine issues of material fact and Ross misrepresented the time at which he arrived at the Marriott.

This misrepresentation is material to State Farm's investigation because if Ross's whereabouts was unknown between 8:20 p.m. at the latest and 9:37 p.m. at the earliest and the fire was reported at 9:59 p.m., Ross could have had time to start the fire.

Ross responds with four arguments. First, Ross asserts that all of the times that are discussed are approximate. However, the Court has construed the times stated by Ross in Ross's favor.

Second, Ross asserts that there is no evidence to support State Farm's contention that his statements amount to material misrepresentations. However, as determined above, there is such evidence.

Third, Ross asserts that he was never prosecuted for the fire. This assertion is, of course, irrelevant as to whether Ross misrepresented his whereabouts at the time of the fire.

Finally, Ross asserts that there is no evidence that State Farm ever conducted an investigation. However, there is Rule 56 evidence that State Farm conducted an investigation. There is evidence that State Farm retained an expert to determine the cause and origin of the fire, obtained the Fire Report from the Dayton Fire Department, obtained Ross's recorded statement, found and viewed the video at the Marriott and conducted Ross's examination under oath.

There are no genuine issues of material fact. Ross made a misrepresentation of a material fact to State Farm relating to State Farm's insurance coverage of the Property. Thus, based upon language in the Policy, the Policy is void.

### **Bad Faith?**

An insurer, such as State Farm, has a legal duty to act in good faith, and a bad faith refusal to settle a claim is a breach of the legal duty to act in good faith. *Staff Builders, Inc. v. Armstrong*, 525 N.E.2d 783, 788 (Ohio 1988)(abrogated on other grounds by *Motorists Mutual Insurance Co. v. Said,* 590 N.E.2d 1228 (Ohio 1992)). Thus, an insurer fails to exercise good faith, or exercises bad faith, when processing a claim where the insurer's refusal to pay is not

based upon circumstances that are reasonably justified. *Id.* at 788.

In this case, State Farm had reasonable justification for denying Ross's claim and voiding the Policy. Ross did not have an insurable interest in the Property, and State Farm thought that Ross had materially misrepresented his whereabouts at the time of the fire.

There are no genuine issues of material fact. State Farm is entitled to summary judgment on Ross's breach-of-duty-of-good-faith claim.

### Punitive Damages?

Ross may be seeking punitive damages. The conduct necessary to support an award of punitive damages is different from the conduct sufficient to establish bad faith. *Armstrong,* 525 N.E.2d at 789. Punitive damages are recoverable from an insurer if the insurer (1) breaches its duty of good faith and (2) acted with actual malice, fraud or insult. *Id.* Actual malice is defined as "that state of mind under which a person's conduct is characterized by hatred or ill will, a spirit of revenge, retaliation or a determination to vent his feelings upon other persons." *Id.*(quoting *Columbus Finance, Inc. v. Howard*, 327 N.E.2d 654, 658 (Ohio 1975)). Finally, under Ohio law, punitive damages must be proved by clear and convincing evidence. Ohio Rev. Code §2315.21(D)(4).

Ross is not entitled to punitive damages from State Farm in this case for at least two reasons. First, State Farm did not breach its duty of good faith. Second, there is no evidence that State Farm acted with actual malice, fraud or insult.

### Summary

Ross did not have an insurable interest in the Property. Therefore, the Policy was properly voided by State Farm.

Ross misrepresented his whereabouts at the time of the fire to State Farm. Therefore, according to its terms, the Policy was properly voided by State Farm.

State Farm's voidance of the Policy and failure to pay Ross's claim was reasonable under the circumstances and was not an act of bad faith. Also, there is no evidence that State Farm acted with malice, so Ross is not entitled to punitive damages from State Farm

There are no genuine issues of material fact and State Farm is entitled to judgment as a matter of law on Ross's breach-of-contract and breach-of-duty-of-good-faith claims. State Farm's Motion for Summary Judgment (doc. #17) is granted. Finally, there being no further issues to adjudicate, the captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED** in Dayton, Ohio this Seventeenth Day of February, 2015.

s/Thomas M. Rose

---

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record